**Randolph PHILLIPS, Plaintiff-Appellant,**

v.

**Andre J. LEVIE and Phillips, Appel & Walden, Defendants-Appellees.**

**No. 458, Docket 78–7424.**

United States Court of Appeals, Second Circuit.

Argued Dec. 21, 1978.

Decided Feb. 15, 1979.

Randolph Phillips, pro se.

Steven H. Lipsitz and Meryl Lynn Unger, New York City, of counsel (Bressler, Lipsitz & Rothenberg, New York City), attorneys for defendants-appellees.

Before FEINBERG, MULLIGAN and GURFEIN, Circuit Judges.

MULLIGAN, Circuit Judge:

Randolph Phillips appeals from a memorandum order and a judgment entered June 27, 1978 in the Southern District of New York, Honorable Vincent L. Broderick, Judge, granting appellees' motion for summary judgment and dismissing appellant's complaint in this action brought for an al-

1. 74 Civ. 2502 (June 13, 1978).

2. Since the complaint was filed and summons issued June 10, 1974 and Levie was never served, the district court dismissed the complaint against Levie for failure to prosecute. Appellant has not contested this ruling on ap-

leged violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (The Act), as barred by the statute of limitations.[1] We reverse the judgment and remand to the district court for further proceedings not inconsistent with this opinion.

I

On May 20, 1968, appellant opened an account with appellee Phillips Appel & Walden, Inc. (Appel), a member of the New York Stock Exchange and the National Association of Securities Dealers and a licensed broker-dealer. At that time appellee Levie,[2] an account representative of Appel, assisted Phillips in completing a "new account form" which reflected Phillips' standing instructions that all shares purchased for his account were to be mailed to him. Upon Levie's recommendation Phillips purchased through Appel 3,000 shares of Kloof Gold Mining Co., Ltd. (Kloof) from Singer & Mackie, Inc. (Singer). Pursuant to the terms of the written confirmation of the purchase order Phillips remitted payment of the $24,298.50 purchase price[3] to Weis, Voisin, Cannon, Inc. (Weis), clearing broker for Appel. Delivery of the shares to appellant was to be made on the settlement date, May 27, 1968.

Weis, however, did not mail the Kloof shares to Phillips. Instead Phillips received a monthly statement dated May 31, 1968 which indicated that the Kloof shares were being held by Weis for Phillips' account. This statement was not accurate. In fact, the Kloof shares had not yet been delivered to Weis by the selling broker, Singer. Weis did not receive the Kloof stock from Singer until June 13, 1968.

In any event, after receipt of the monthly statement Phillips requested in a letter of

peal and we see no reason to disturb this portion of the judgment.

3. The total included the $7.95 per share price of Kloof stock and the $484.50 commission on the transaction.

June 7, 1968 that Weis forward the shares to the firm of Halle & Steiglitz. When the shares were not forthcoming Phillips directed subsequent requests for delivery of the Kloof stock to Weis' vice-president on July 2, 1968 and at an unspecified date soon thereafter. These requests were also unavailing. Finally, on July 16, 1968 Phillips instructed Weis to sell the stock. After effecting the transaction Weis sent Phillips a check in the amount of $23,475 covering the proceeds of the sale minus tax and commissions.

Phillips filed a complaint in the district court on June 10, 1974, alleging jurisdiction under the Act, 15 U.S.C. § 78aa.[4] As the district court observed:

> The gravamen of [Phillips'] complaint is that Appel, through its agent Weis, fraudulently retained possession of plaintiff's shares; that when the price of those shares began to fall plaintiff was precluded from selling them; and that on July 16, 1968 plaintiff was compelled to sell the shares through Weis in order to free his funds, thereby paying a "coerced commission," having been unable to sell through the broker of his choice.

Phillips asserted that the above facts stated a claim under section 10(b)[5] and Rule 10b–5, 17 C.F.R. § 240, 10b–5.[6] Additionally, he maintained that his complaint set forth a state law breach of contract action over which the district court had pendent jurisdiction.

Appel denied the material allegations of the complaint and asserted numerous affirmative defenses, including that of statute of limitations. Appel subsequently moved for summary judgment on five of its affirmative defenses.[7] Phillips cross-moved for summary judgment. The district court granted Appel's motion solely on the basis that the federal securities law claim was time-barred and dismissed the complaint. Phillips' motion for reargument was denied and this appeal followed.[8]

## II

Since the Act provides no statute of limitations for actions brought under section 10(b) the federal courts apply the limitations period applicable to the forum's most closely analogous state law action. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n.18, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); see *Stull v. Bayard,* 561 F.2d 429, 431 (2d Cir. 1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978).

4. In 1969 Phillips filed an action against Weis in the Southern District of New York alleging federal securities law violations arising from Weis' failure to deliver the shares. Soon after initiation of that action Weis went into bankruptcy and the suit has not been actively pursued. On this appeal Phillips contends that filing of the 1969 action against Weis tolled the statute of limitations from running in favor of appellees. See N.Y.C.P.L.R. § 203(b). In view of our disposition of this appeal we need not address this argument.

5. Phillips also claimed a violation of section 10(a) of the Act, 15 U.S.C. § 78j(a) and Reg. 10a–2(a), 17 C.F.R. § 240.10a–2(a). Section 10(a), however, is concerned with regulation of manipulative and deceptive practices in short sales. On appeal Phillips has conceded that no short sale was involved here and that section 10(a) is, accordingly, not relevant.

6. See generally Jacobs, The Impact of Securities Exchange Act Rule 10b–5 on Broker-Dealers, 57 Cornell L.Rev. 869, 957–63 (1972).

In view of its holding that any action under section 10(b) arising out of these facts was time-barred, the district court made no attempt to examine the substantive viability of Phillips' federal securities law claims. Absent findings on this matter in the district court we are disinclined to make such a determination in the first instance. See *Republic Technology Fund, Inc. v. Lionel Corp.,* 483 F.2d 540, 553 (2d Cir. 1973), cert. denied, 415 U.S. 918, 94 S.Ct. 1416, 39 L.Ed.2d 472 (1974).

7. These affirmative defenses were 1) failure to join a party needed for just adjudication pursuant to Fed.R.Civ.P. 19; 2) failure to state a claim upon which relief can be granted; 3) lack of subject matter jurisdiction; 4) statute of limitations; 5) estoppel, waiver, affirmance and laches.

8. The lower court also denied Phillips' cross-motion, denied attorney's fees to both parties, and awarded appellee costs. Although noting that the common law breach of contract action also appeared to be time-barred, the district court simply dismissed that pendent claim for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

This circuit has repeatedly held that New York's statute of limitations governing common law fraud actions is applicable to section 10(b) claims. E. g., *Klein v. Shields & Co.,* 470 F.2d 1344 (2d Cir. 1972); *Klein v. Auchincloss, Parker & Redpath,* 436 F.2d 339, 341 (2d Cir. 1971). At the same time federal law determines when the period begins to run as to a federal securities law claim. *Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir. 1977). Under federal law the statute begins to run "when the plaintiff has actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Stull v. Bayard, supra,* at 432.

Applying these principles the district court looked to N.Y.C.P.L.R. § 213(8),[9] which sets forth a six year statute of limitations period for fraud actions, and held that pursuant to federal law the statute began to run from the time Phillips reasonably should have discovered the fraudulent scheme. The district judge then found that Phillips "was in possession of all the information necessary to alert him to the alleged fraud" by June 7, 1968, the date on which he wrote to Weis insisting that the Kloof shares be sent to him according to his earlier instructions. The district court held,

therefore, that the six year limitation period had run by June 10, 1974 when Phillips filed his complaint.

We fully agree that commencement of the statutory period does not await a plaintiff's "leisurely discovery of the full details of the alleged scheme," *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970); accord, *Arneil v. Ramsey, supra,* 550 F.2d at 780. However, here Phillips did not act in a dilatory fashion. He was advised on May 31, 1968 that the Kloof shares were being held by Weis for his account. Phillips then made several prompt requests for delivery between June 7 and July 16. Had appellant made an immediate investigation he would have found that Weis had not even received the Kloof stock until June 13, 1968. Thus the circumstances prior to that date might have indicated either a negligent or intentional breach of the agreement with Phillips, but they did not demonstrate a fraudulent *retention* of the shares, which is the gist of the complaint.[10] The alleged fraudulent retention could only have commenced on June 13, not at an earlier date as found below.[11] Accordingly, the action commenced on June 10, 1974 was timely under the six year statute of limitations applicable in New York.[12] Reversed and remanded.

9. C.P.L.R. § 213(8) provides:

an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.

10. Had Phillips looked deeper into the circumstances surrounding Weis' failure to comply with his directives of May 20 and June 7, we simply cannot say with assurance that he would have been alerted to the alleged fraudulent withholding of his shares by Weis. Compare *Arneil v. Ramsey, supra* (plaintiff should have discovered his claim after New York Stock Exchange issued public notice of defendant's financial difficulties and one defendant had admitted willful securities law violations in an S.E.C. release); *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 410 (2d Cir. 1975) (plaintiffs should have discovered fraud in view of suspension of trading in defendant's stock and the filing of lawsuits against defendant by S.E.C. and private parties).

11. We are not unmindful of a district court's obligation to examine the essence of a plaintiff's action rather than its label so that the plaintiff cannot "evade the strictures of limitations statutes simply by clever characterization of claims." *Korry v. ITT Corp.,* 444 F.Supp. 193, 195 (S.D.N.Y.1978). In the instant case, however, the allegation of actual possession by Weis of the Kloof shares is so integral to the alleged fraudulent retention that we do not view Phillips' complaint as an exercise in legal legerdemain. Whether on these facts appellant can establish a 10(b) violation, of course, is an issue upon which we make no judgment. See note 6, *supra.*

12. The court below failed to indicate that section 213(8) is not the sole statute involved in determining the New York limitation period for fraud actions. N.Y.C.P.L.R. § 203(f) must also be consulted. E. g., *Klein v. Shields & Co., supra; Hoff Research & Development Laboratories, Inc. v. Philippine National Bank,* 426 F.2d 1023, 1025–26 (2d Cir. 1970). That section provides in part:

. . . [W]here the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery.

When sections 213(8) and 203(f) are read together, they have been construed to mean that in fraud actions suit must be commenced within six years after the commission of the fraud or within two years of the date the fraud was or should have been discovered, *whichever is longer. Stull v. Bayard, supra,* 561 F.2d at 432; *Rutland House Associates v. Danoff,* 37 A.D.2d 828, 325 N.Y.S.2d 273 (1st Dept. 1971); see McLaughlin, Commentary to N.Y.C.P.L.R. § 203(f) at 125–26 (McKinney 1972). Since the fraud claimed here could not have commenced until June 13, 1968, this action is, in any event, timely.