Lavelle-Tomko v Aswad & Ingraham (2021 NY Slip Op 01112)





Lavelle-Tomko v Aswad & Ingraham


2021 NY Slip Op 01112


Decided on February 18, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 18, 2021

531639

[*1]Kathleen Lavelle-Tomko, Appellant,
v
Aswad & Ingraham et al., Respondents.

Calendar Date: January 5, 2021

Before: Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.


Michaels & Smolak, PC, Auburn (Michael G. Bersani of counsel), for appellant.
Costello, Cooney & Fearon, PLLC, Syracuse (Paul G. Ferrara of counsel), for respondents.



Garry, P.J.
Appeal from an order of the Supreme Court (McBride, J.), entered May 4, 2020 in Broome County, which, among other things, granted defendants' motion for summary judgment dismissing the amended complaint.
After plaintiff was terminated by her former employer (hereinafter Century 21) from her position as a real estate agent in 2004, she allegedly used her access to Century 21's voicemail to steal business, among other things. Century 21's owners, Thomas A. Sbarra and Deborah J. Sbarra, discovered plaintiff's activity in 2007 and commenced a civil action against her (hereinafter the first action). The Department of State's Division of Licensing Services Enforcement Unit (hereinafter the Department) then began an investigation into plaintiff's conduct. Plaintiff hired defendant Richard N. Aswad and his law firm, defendant Aswad & Ingraham (hereinafter A & I), to represent her in the first action, signing a letter of engagement on July 27, 2007 and providing A & I a retainer. Aswad represented plaintiff in the negotiation of a settlement agreement with Century 21 and the Sbarras, which was executed on August 19, 2007. The settlement agreement required plaintiff to, among other things, surrender her real estate license to the Department and cease working as a real estate agent or broker by September 1, 2007. Aswad timely delivered plaintiff's license to the Department. Pursuant to plaintiff's request to cancel her retainer agreements, on October 8, 2007, A & I sent plaintiff the balance of her retainer. In March 2008, after some negotiation involving Aswad and other attorneys, plaintiff's license surrender was accepted by the Department.
In September 2009, plaintiff reapplied for and received her real estate license, and she resumed employment as a real estate broker in January 2010. On February 24, 2010, the attorney for Century 21 and the Sbarras wrote to Aswad asserting that plaintiff had violated the settlement agreement, as it had permanently barred plaintiff from reacquiring her license or resuming work as a broker or agent. Aswad responded that his representation of plaintiff had ended and he had not been retained on a continuing basis, and he forwarded the attorney's letter to plaintiff. Plaintiff then asked Aswad to respond to the letter, which he did. When Century 21 and the Sbarras commenced an action for breach of the settlement agreement (hereinafter the second action), Aswad became attorney of record. Century 21 and the Sbarras prevailed at trial, obtaining a judgment requiring plaintiff to permanently surrender her real estate license, along with nominal damages (see Thomas A. Sbarra Real Estate, Inc. v Lavelle-Tomko, 117 AD3d 1210, 1210 [2014], lv denied 26 NY3d 907 [2015]). Aswad's representation ended on September 24, 2015, after exhausting all appeals in the second action.
Plaintiff commenced this legal malpractice action on October 25, 2016, focusing on Aswad's failure to clarify the meaning of "surrender" in the settlement [*2]agreement. After the note of issue was filed, defendants moved for summary judgment dismissing the amended complaint. Plaintiff cross-moved to dismiss most of the affirmative defenses and for leave to amend her amended complaint to add a cause of action pursuant to Judiciary Law § 487. Finding that the malpractice action was time-barred, Supreme Court granted defendants' motion for summary judgment dismissing the amended complaint and denied the cross motion as moot. Plaintiff appeals.
"An action to recover damages arising from legal malpractice must be commenced within three years after accrual" (Zorn v Gilbert, 8 NY3d 933, 933-934 [2007] [citation omitted]; see CPLR 214 [6]), which occurs at the time of the injury and not at the time that the injury is discovered (see McCoy v Feinman, 99 NY2d 295, 301 [2002]). In seeking to obtain dismissal of the action based on the statute of limitations, defendants bore the initial burden of demonstrating that the time within which to commence had expired, including establishing the date that the cause of action accrued (see Matter of Steinberg, 183 AD3d 1067, 1070 [2020]; Haynes v Williams, 162 AD3d 1377, 1378 [2018], lv denied 32 NY3d 906 [2018]; Krog Corp. v Vanner Group, Inc., 158 AD3d 914, 915 [2018]). If defendants met that initial burden, "the burden then shift[ed] to . . . plaintiff to raise a question of fact as to whether the statute of limitations has been tolled or was otherwise inapplicable" (Krog Corp. v Vanner Group, Inc., 158 AD3d at 916 [internal quotation marks and citations omitted]; see International Electron Devices [USA] LLC v Menter, Rudin & Trivelpiece, P.C., 71 AD3d 1512, 1512 [2010]).
Defendants demonstrated, and plaintiff does not dispute, that her cause of action accrued on August 19, 2007, the date that she executed the settlement agreement in the first action. Plaintiff commenced this action on October 25, 2016, more than nine years after accrual and well beyond the three-year statute of limitations (see CPLR 214 [6]). Defendants thus met their initial burden on their motion for summary judgment based on that defense (see Haynes v Williams, 162 AD3d at 1378). The burden then shifted to plaintiff to demonstrate that the statute of limitations was tolled or otherwise inapplicable, or at least that there is a question of fact to prevent summary judgment to defendants on that issue. Similarly, on the portion of plaintiff's cross motion seeking dismissal of defendants' statute of limitations defense, plaintiff had to prove as a matter of law that her action is not time-barred (see Red Zone LLC v Cadwalader, Wickersham & Taft LLP, 27 NY3d 1048, 1049-1050 [2016]).
To meet her burden, plaintiff primarily relies on the continuous representation doctrine. "This doctrine applies where there is continuing trust and confidence in the relationship between the parties and the attorney's continuing representation pertains to the specific matter in which the attorney committed the [*3]alleged malpractice, not merely the continuity of a general professional relationship" (Deep v Boies, 53 AD3d 948, 950 [2008] [internal quotation marks and citations omitted]; see McCoy v Feinman, 99 NY2d at 306; Shumsky v Eisenstein, 96 NY2d 164, 168 [2001]; Deep v Boies, 121 AD3d 1316, 1318 [2014], lv denied 25 NY3d 903 [2015]). "The continuous representation doctrine tolls the statute of limitations where there is a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" (Zorn v Gilbert, 8 NY3d at 934 [internal quotation marks, ellipsis and citations omitted]). "For the continuous representation doctrine to apply to an action sounding in legal malpractice, there must be clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney, which often includes an attempt by the attorney to rectify an alleged act of malpractice" (International Electron Devices [USA] LLC v Menter, Rudin & Trivelpiece, P.C., 71 AD3d at 1512-1513 [internal quotation marks, ellipsis, brackets and citations omitted]; see Leeder v Antonucci, 174 AD3d 1469, 1471 [2019]; see also Matter of Lawrence, 24 NY3d 320, 342-343 [2014]; Creative Rest., Inc. v Dyckman Plumbing & Heating, Inc., 184 AD3d 803, 805 [2020]).
Plaintiff submitted the retainer agreement from the first action in which A & I agreed to represent plaintiff "in all proceedings arising from allegations against [her] concerning voice mail and related allegations by [Century 21] or any others currently unknown." Plaintiff also submitted a letter of engagement dated July 27, 2007 in which A & I agreed to represent plaintiff in "[l]itigation involving [Century 21], et al against [plaintiff]." Although the settlement agreement in the first action was signed in August 2007, the record contains proof that defendants handled a court appearance and filed a stipulation of discontinuance in October 2007, obtained certifications from plaintiff's accountant and supplied them to the Sbarras as required by the settlement agreement, corresponded with other attorneys and reviewed documents regarding plaintiff's surrender of her license to the Department through early 2008. They also worked four days in August and September 2008 in connection with plaintiff's payoff of a note and mortgage that she obtained to meet her obligations under the settlement agreement. When Aswad received the cease and desist letter in February 2010, he communicated with plaintiff and agreed to respond on her behalf. Although no new retainer agreement or letter of engagement was signed for the second action, defendants acknowledge that they were the attorneys of record for plaintiff in that action. Defendants' time records show that they used the same file number for their work on plaintiff's behalf during the first action, after the settlement agreement was signed and during the second action, thereby potentially lending support to [*4]the argument that their representation of plaintiff was continuous and was all related to the same matter. Defendants did not bill plaintiff for their work on the second action; this might possibly support an inference that defendants were assisting in the second action because it arose from or related to poor advice or malpractice in the prior action.
Plaintiff also submitted her letter to Aswad requesting return of the balance of her retainer and a final accounting, which resulted in Aswad's letter of October 8, 2007 returning her retainer balance and outlining the few remaining tasks he had to complete related to the first action. Plaintiff was represented by an attorney hired by her new employer for the license surrender, although that attorney communicated with Aswad regarding the matter. In Aswad's March 2010 letter in response to the Sbarras' cease and desist letter, Aswad stated that his representation of plaintiff had ended and she had not retained him on a continuing basis. Emails show that plaintiff and her husband then consulted with another litigation attorney, who is also a law partner of plaintiff's husband, before continuing to work with defendants. The husband's law partner and an associate from their firm remained involved throughout the second action, with efforts including legal research and writing the appellate briefs.
In sum, some of the evidence suggests that defendants' representation was continuous, that the first and second actions concerned the same matter, and that defendants were involved in the second action to rectify their alleged malpractice in the first action. However, other evidence indicates that defendants' representation terminated after the first action, the parties had no communication for more than a year, and they agreed to commence a new representation related to the second action; this evidence is inconsistent with a mutual understanding by the parties of the need for further representation on the same matter. Also weighing against plaintiff's argument is evidence of involvement by and consultation with other attorneys, including her husband and his law partner, raising the possibility that plaintiff did not repose her trust and confidence in defendants (compare Farage v Ehrenberg, 124 AD3d 159, 167-168 [2014], lv denied 25 NY3d 906 [2015]). Thus, although plaintiff raised questions of fact as to the defense, she failed to conclusively establish that the continuous representation doctrine tolled the statute of limitations (see Red Zone LLC v Cadwalader, Wickersham & Taft LLP, 27 NY3d at 1050; Town of Amherst v Weiss, 120 AD3d 1550, 1552-1553 [2014]; Deep v Boies, 53 AD3d at 952; Gravel v Cicola, 297 AD2d 620, 621 [2002]). Accordingly, although plaintiff was not entitled to summary judgment granting dismissal of the statute of limitations defense, we find that Supreme Court erred in granting summary judgment to defendants based on that defense.
We deny the portion of plaintiff's cross motion [*5]seeking to equitably estop defendants from asserting their statute of limitations defense. "Equitable estoppel is an extraordinary remedy which applies where a party is prevented from filing an action within the applicable statute of limitations due to his or her reasonable reliance on deception, fraud or misrepresentations by the other" (City of Binghamton v Hawk Eng'g P.C., 85 AD3d 1417, 1420 [2011] [internal quotation marks and citations omitted], lv denied 17 NY3d 713 [2011]). Plaintiff, as the moving party, bore the burden of proving by clear and convincing evidence that defendants' affirmative misconduct prevented her from timely commencing the malpractice action (see id.; Cellupica v Bruce, 48 AD3d 1020, 1021 [2008]). "For the doctrine to apply, a plaintiff may not rely on the same act that forms the basis for the claim — the later fraudulent misrepresentation must be for the purpose of concealing the former tort" (Ross v Louise Wise Servs., Inc., 8 NY3d 478, 491 [2007] [citations omitted]; see State of N.Y. Workers' Compensation Bd. v Wang, 147 AD3d 104, 113 [2017]; Pulver v Dougherty, 58 AD3d 978, 980 [2009]). "The uncommon remedy of equitable estoppel is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient" (Ross v Louise Wise Servs., Inc., 8 NY3d at 491 [internal quotation marks and citation omitted]; see McDonald v Edelman & Edelman, P.C., 118 AD3d 562, 563 [2014]). Plaintiff failed to meet her burden to establish her right to estoppel, because she relied on defendants' alleged deceit or misrepresentations that occurred prior to the execution of the settlement agreement in the first action (i.e., when the alleged malpractice occurred), and defendants' later silence and failure to disclose their alleged malpractice.
We also deny the portion of plaintiff's cross motion seeking to amend her amended complaint to add a cause of action under Judiciary Law § 487. "[I]n the absence of prejudice or surprise resulting directly from the delay in seeking leave [to amend a pleading], such applications are to be freely granted unless the proposed amendment is palpably insufficient or patently devoid of merit" (Lakeview Outlets Inc. v Town of Malta, 166 AD3d 1445, 1446 [2018] [internal quotation marks and citations omitted]). Judiciary Law § 487 permits recovery of treble damages in a civil action against an attorney who intentionally deceives the court or a party during the pendency of a judicial proceeding (see Beshara v Little, 215 AD2d 823, 823 [1995]; see generally Amalfitano v Rosenberg, 12 NY3d 8, 14 [2009]). The claim must be pleaded with particularity and allege "intentional deceit and damages proximately caused by the deceit" (Jean v Chinitz, 163 AD3d 497, 497 [2018]). The proposed third amended complaint is palpably insufficient; it fails to plead the cause of action with particularity, as plaintiff pleaded no facts tending to prove [*6]that Aswad intended to deceive her. Moreover, plaintiff was aware of the facts allegedly supporting her proposed amendment before she filed the note of issue and certificate of readiness, yet she waited more than six months after such filing before seeking to add the Judiciary Law § 487 cause of action. Defendants plausibly assert prejudice related to this delay, as they intend to seek discovery on this new claim, but discovery is otherwise complete. Under the circumstances, plaintiff may not amend her amended complaint to add this new cause of action.
Pursuant to CPLR 1411, a defendant in an action to recover damages for personal injury, injury to property or wrongful death may assert a plaintiff's culpable conduct as an affirmative defense in mitigation of damages. Notwithstanding the limits in the plain text of the statute, "[t]he principles of comparative negligence have been found to be applicable in malpractice cases" and this Court has cited to CPLR 1411 for that proposition (Hall & Co. v Steiner & Mondore, 147 AD2d 225, 228 n [1989]; see Hattem v Smith, 149 AD3d 1339, 1342 [2017]; Hattem v Smith, 111 AD3d 1107, 1108 [2013]; Schaeffer v Lipton, 243 AD2d 969, 971 [1997]). Therefore, plaintiff did not demonstrate that she was entitled to dismissal of defendants' defense based on CPLR 1411. Plaintiff also failed to carry her burden of proving the inapplicability of General Obligations Law § 15-108 as a matter of law. However, plaintiff is entitled to dismissal of defendants' third affirmative defense based on CPLR article 16, which does not apply to this action. The provisions of that article apply to joint tortfeasors sharing liability for noneconomic damages (see CPLR 1601, 1602); legal malpractice actions permit a plaintiff to recover only economic damages (see Kaiser v Van Houten, 12 AD3d 1012, 1014 [2004]; Risman v Leader, 256 AD2d 1245, 1245 [1998]).
Finally, defendants failed to demonstrate their entitlement to summary judgment on the merits, as the record evinces questions of fact regarding whether plaintiff can establish all the elements of her malpractice claim, including causation and damages (see Levine v Horton, 127 AD3d 1395, 1398 [2015]; M & R Ginsburg, LLC v Segal, Goldman, Mazzotta & Siegel, P.C., 90 AD3d 1208, 1210-1211 [2011]; cf. Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438, 443 [2007]; Geraci v Munnelly, 85 AD3d 1361, 1362 [2011]).
Clark, Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment dismissing the amended complaint and denied that part of plaintiff's cross motion seeking dismissal of defendants' third affirmative defense; motion denied, cross motion granted to said extent and said affirmative defense dismissed; and, as so modified, affirmed.